[No 7,601.—Department Two.]

## H. A. PRATT *v.* H. F. CRANE ET AL.

CONFLICT OF PATENTS—MEXICAN CLAIM—RESERVED LAND—CONSTRUCTION OF STATUTE.—The case of *Huff* v. *Doyle*, 93 U. S. 558, referred to as deciding the principal points of this case.

ID.—ID.—ID.—ID.—CONFLICT OF PATENTS.—A patent of the United States for land to which it has no title conveys none; so held with reference to a patent of the United States, issued after the land was listed to and patented by the State to another.

ID.—ID.—ID.—ID.—ID.—PACIFIC RAILROAD.—Upon the filing of the plat of the Central Pacific Railroad, only the vacant odd-numbered sections within the twenty miles limit were withdrawn, and the even-numbered sections remained subject to pre-emption and homestead as before.

ID.—ID.—ID.—ID.—ID.—Under the third section of the Act of Congress of July 22d, 1866, the State selections confirmed by the act " have the same force and effect as the pre-emption rights of a settler on the unsurveyed land."

APPEAL from a judgment for the defendants in the Third District Court, County of Alameda. McKEE, J.

The defendants deraigned title under a State patent to one Joel Harlan for the west half of a section, the east half of which was on the same day patented to the plaintiff in the case of Huff *v.* Doyle, the titles of Huff and Harlan being exactly similar.

*Moore, Laine & Leib*, for Appellant.

The plaintiffs by the production of their patents from a

paramount source of title made a *prima facia* showing of title; which the defendants can not overthrow by the production of an elder patent from the State, a subordinate source of title; but to prevail they must go behind the State patents and show a title vested in the State antedating our title. (*Smith* v. *Athern*, 34 Cal. 511; *Megerle* v. *Ashe*, 33 id. 74; *Buhne* v. *Chism*, 48 id. 476.) The State location was an unsurveyed lien location and therefore void. (*Hodapp* v. *Sharp*, 40 Cal. 69; *Collins* v. *Bartlett*, 44 id. 371; *Chant* v. *Reynolds*, 49 id. 217.) The State selection was not validated by the Act of Congress of July 23d, 1866. The findings show that these lands are and were within the twenty-mile limits of the grant and withdrawal made under the railroad acts of 1862 and 1864, which withdrawal took effect January 30th, 1865, long before the passage of the act of July 23d, 1866. This withdrawal under the railroad acts placed the strip of land in a special and peculiar category, and set it apart from what is denominated the public domain by the laws and resolutions of the United States in regard to the disposition of her lands, while the act of July 23d, 1866, only applies to the "public domain" as generally understood. At an early date in the history of these railroad grants, the lands within the railroad belts were raised to double minimum price, and were withdrawn from ordinary selection and location. On March 3d, 1853, Congress passed an act allowing a person the special privilege of pre-empting lands within such railroad belts not granted to the companies, at two dollars and fifty cents per acre, provided settlement was made prior to final allotment of the lands granted the railroad companies. (1 Lester, 204–205.) By the Act of Congress of March 27th, 1854, all persons settling as pre-emptors within railroad belts prior to withdrawal could pre-empt such lands at one dollar and twenty-five cents per acre. (1 Lester, 215, 216.) These were special and peculiar privileges allowed to one class of persons only, and even that class had not the general right of pre-emption as on the· "public domain" proper. This being the state of the United States laws as to lands within railroad withdrawals on the 6th day of March, 1868, Congress passed an Act as to all the even sections of land within the belts granted to the Pacific Railroad and its

branches devoting them exclusively to pre-emption and homestead entry. (2 Lester, 215, No. 204.) As this act was passed long prior to the survey or pretended listing of this land to the State, such listing was in direct violation of said act, and therefore void.

*H. F. Crane,* for Respondents.

The patents under which appellant claims title are void. They were issued nearly five years after the land had been certified over to the State, under the Act of Congress of July 23d, 1866 (2 Lester, 180), and by the State patented to respondents' grantor, Harlan. After the land had been certified over to the State, the officers of the Land Departments of the United States had no further jurisdiction or authority in the matter of disposing of the land. (*Moore* v. *Robbins,* 96 U. S. 530; *Simmons* v. *Wagner,* 101 id. 260; *Wilkinson* v. *Merrill,* 52 Cal. 426; *Hastings* v. *Jackson,* 46 id. 243; *U. S.* v. *Schurz,* 102 U. S. 402; *Huff* v. *Doyle & Bales,* 93 id. 558.) By the third section of the act Harlan was given all the rights of a pre-emption settler upon unsurveyed land. (See U. S. Stat. at Large, 218; *Toland* v. *Mandell,* 38 Cal. 43; *Hodapp* v. *Sharp,* 40 id. 69; *Foscalina* v. *Doyle et al.,* 47 id. 437; *Huff* v. *Doyle et al.,* 93 U. S. 558.)

SHARPSTEIN, J.

Action to quiet title. The appellant relies upon a patent of the United States, and the respondents rely upon a State patent for the land in controversy. The date of the latter is prior to that of the former, and if valid the latter must prevail. This appeal is from the judgment, which the appellant insists is not supported by the findings. The facts found, with two exceptions, are the same as those found in *Huff* v. *Doyle,* 93 U. S. 558, which were held to be sufficient to entitle the plaintiff in that action to recover.

The plaintiff in that action had acquired from the State a patent, based upon a selection, location, and certification in all respects like those upon which the patent under which respondents' claim is based. Like the land involved in this controversy, the land involved in that was within the exterior

boundaries of the Mexican grant Las Pocitas. In two respects the appellant claims that this case differs from that:

1. It is found in this case that the appellant, on the first day of March, 1876, obtained a patent for the land in controversy from the United States; and in that case it was not found that the defendants had ever obtained a patent from that source. But this is an immaterial distinction. The Court in that case held that the United States had, prior to 1876, parted with its title, and that the same had vested in the State. It is unnecessary to cite authorities to prove that a patent of the United States for land to which it has no title, conveys none.

2. It is found in this case that the land in controversy was situated within twenty miles of the line of the western division of the Central Pacific Railroad, and that the vacant odd-numbered sections of Government lands within that distance of said railroad were, on the 30th of January, 1865, withdrawn from sale, location, pre-emption, and homestead by order of the Commissioner of the General Land Office.

The vacant *odd*-numbered sections only were so withdrawn, and the land in controversy here is within an *even*-numbered section. The even-numbered sections remained subject to pre-emption and homestead as before, and the third section of the Act of Congress of July 23d, 1866, upon which the respondents rely, declares that " the selections made under the authority of the State shall have the same force and effect as the pre-emption rights of a settler on the unsurveyed land, and that the holder of the State title shall be allowed the same time, after the surveys are made and the plat filed, to prove up his purchase and claim as is allowed to pre-emptors under existing laws." (*Huff* v. *Doyle*, 93 U. S. 558, 563.)

It is quite clear, then, that the relation in which the respondents' grantor stood to this land, the same being within an even-numbered section, was that of a pre-emptor, and as such he had a right to prove up his purchase and claim.

Judgment affirmed.

THORNTON, J., concurred.

MYRICK, J., concurred in the judgment on the authority of *Huff* v. *Doyle*, 93 U. S. 558.