[No. 7,251.—In Bank.
May 30, 1882.

## JOSE AURRECOECHEA v. DUNCAN SINCLAIR ET AL.

PATENT—CONSTRUCTIVE TRUST—REVIEW OF DECISION OF LAND OFFICERS—
PURCHASER IN GOOD FAITH—COMPLAINT—LEGAL CONCLUSIONS—CER-
TIFICATE OF PURCHASE—EVIDENCE—RIGHT OF PRE-EMPTION UNDER THE
ACT OF JULY 23, 1866.—In an action by the assignee of a purchaser from
the State under an invalid selection—claimed to have been confirmed by
the Act of Congress of July 23, 1866, "to quiet land titles in California"
—against a pre-emption claimant, to whom, after a contest before the Land
Department, a patent had been issued—the object of the action being to
have the defendant adjudged a trustee of the legal title for the plaintiff—

the complaint alleged that on the contest the commissioner "found as a matter of fact, that in the year 1863, the State of California selected and located said land under the laws of said State, and did thereafter sell and dispose of the same to the grantor of the plaintiff, as is hereinbefore more fully stated; and that on the seventeenth day of February, 1864, the grantor of the plaintiff became the purchaser in good faith of said land from the State under her laws—paid the purchase price and received a certificate of purchase therefore as hereinbefore stated;" * * * that the only objection made to said claim, on said contest and investigation, and the only objection which has ever existed thereto, was the fact that said land so selected and located as aforesaid was embraced by said exterior boundaries of the Mexican grant "Las Pocitas." * * * that said contest and investigation was had long after said tract of land in question had been forever excluded from any claim under said Mexican grant;" and that the decision of the commissioner and of the Secretary of the Interior was based solely on this mistake of law; but it did not appear from the allegations of the complaint that the plaintiff's grantors had complied with the laws of the State so as to constitute them *bona fide* purchasers except so far as this might appear from the general averment that they were purchasers in good faith and that a certificate of purchase had issued to them; nor was it alleged that the plaintiff himself was a *bona fide* purchaser from his assignors.

*Held:* The complaint was fatally defective in not alleging the facts essential to constitute the plaintiff's grantors purchasers in good faith from the State. The general averment that they were such purchasers was an averment of a conclusion of law only. The certificate of purchase, having been issued for land not subject to location, and being consequently void, was not competent evidence of the purchase. The complaint was also defective in not alleging that the plaintiff himself was a purchaser in good faith from his assignors. Inferentially he became the owner of the certificate after the decision of the Land Department, and assuming this to be the fact, he bought with notice of the possession of the defendant, of the judgment in his favor, and of the issuance of the patent, and was therefore not a *bona fide* purchaser from the State within the meaning of the Act. The complaint was also defective in not alleging that the land, in lieu of which it was alleged the land in dispute was selected, had been lost to the State.

APPEAL from a judgment for the defendant in the Third District Court of the County of Alameda.

The judgment was on demurrer to the complaint, which was as follows:

The plaintiff, Jose Aurrecoechea, for cause of action against the above-named defendants, avers and shows to said Court the following facts, to wit:

I. That the plaintiff is ignorant of the names of certain defendants herein, and has designated such defendants by the

names of John Doe and Richard Roe. That heretofore, to wit, in the year 1863, the State of California, by its proper officer, to wit, the State Locating Agent, and in pursuance and under and by virtue of the laws of said State, and in part satisfaction of the grant by the United States to said State of the sixteenth and thirty-sixth sections of land in each township in said State, or other lands in lieu thereof, under an Act of Congress, entitled "An Act to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes," approved March 3, 1853, selected and located the following described land, viz.: The north half of the southeast quarter of section 7, township 3 south, range 3 east, Mount Diablo Meridian, in the County of Alameda, State of California, containing eighty acres of land, more or less. That said land was so selected and located by the State of California, in lieu of and as indemnity for certain sixteenth and thirty-sixth sections of lands in said State, or portions thereof, which had become lost to said State under the terms and conditions of said Act of Congress aforesaid.

II. That thereafter, on the seventeenth day of February, 1864, the State of California, under and in pursuance of the laws of said State in that behalf made and provided, sold said tract of land so selected and located as aforesaid, and the plaintiff and his grantors became and were the purchasers of said land in good faith from the State of California, and then and there paid to said State the purchase price therefor, pursuant to the law of the State; and then and there the State of California, by its proper officer, to wit, the Register of the State Land Office, issued and delivered to the grantors of the plaintiffs, pursuant to the law of the State, a certificate of purchase of said land. That in or about the year 1865, the grantor of the plaintiff, under and by virtue of said purchase and said certificate of purchase, entered into and upon said tract of land, and thereafter held and enjoyed the actual possession thereof until he was ousted therefrom by the defendants, as hereinafter more fully shown.

III. That prior to the year 1866, the State of California had, in the manner aforesaid, selected and located a large amount of land in said State in part satisfaction of grants by

the United States to said State, and had, in pursuance of the laws of said State, sold said land to purchasers in good faith under said laws; that many of such selections and locations were believed to be irregular and invalid under the laws of the United States by reason of the defective legislation and action on the part of the State in the selection and disposal of said lands; and the selection and location of the land hereinbefore described and sold to the grantor of the plaintiff, was one of such irregular selections and locations.

That for the purpose of furnishing relief to all such *bona fide* purchasers of lands from the State, and for the purpose of furnishing them with the means and opportunity of perfecting their said purchases and acquiring the legal title to the lands so as aforesaid purchased by them from the State of California, and at the request of said State, through its Legislature, the Congress of the United States did, on the twenty-third day of July, 1866, pass an Act entitled "An Act to quiet land titles in California."

That the township embracing the tract of land hereinbefore designated and described, was surveyed in the field by the Surveyor General of the United States for the State of California, and by him sectionized and subdivided in the year 1862; that thereafter, and in the same year, he constructed such survey and delineated the same into and upon a township plat, and approved such survey and plat and caused a duplicate of such township plat so made and approved as aforesaid by him to be filed in the General Land Office of the United States at Washington, and in the office of the said Surveyor-General at San Francisco; and as the plaintiff is informed and verily believes, the said Surveyor-General at the same time, to wit, in the year 1862, also caused a duplicate of such township plat and survey to be filed in the local Land Office, in the district embracing said land, to wit, at San Francisco; that such township plat was afterward, and after said State selection and location had been made, by some person unknown to the plaintiff, withdrawn and removed from said local Land Office, but was afterwards, and on or about the first day of July, 1871, returned and filed in said local Land Office, where the same has since remained and is now on file.

IV. That long prior to said last-named date, the plaintiff, and those under whom he claims said land, had presented said State selection and location, and the claim and title to said land thereunder, to the Register and officers of said local Land Office of the United States, and said officers had full and particular notice thereof; and said selection and location was by said Register noted and entered in writing upon the tract book of said local Land Office, and the same was also entered upon and noted in writing upon the tract books of the General Land Office of the United States, at Washington; that such notice and presentation was made and noted and entered in said tract books, as aforesaid, some time in the year 1866.

That said Register of the local Land Office, and the Commissioner of the General Land Office of the United States had full knowledge of all the facts herein stated in relation to said location and selection and sale by the State, and of the purchase of said land by the grantor of the plaintiff, from and after the date of such presentation and notice and entry as aforesaid, but neglected to take any action thereon, on account of the delay in the final settlement of the survey of that certain Mexican grant called "Las Pocitas," as hereinafter more particularly mentioned.

V. That on or about the twenty-fourth day of September, 1870, the defendant Duncan Sinclair, with full knowledge of the claim and title of the plaintiff to said land as herein stated, and while the plaintiff, or those under whom he claims, was in possession of said land as aforesaid, did enter into and upon said land, and did oust the plaintiff and those under whom he claims therefrom, claiming the right to pre-empt said land under the general pre-emption laws of the United States. That on the twenty-sixth day of June, 1871, said defendant Sinclair filed in the local Land Office of the United States a declaratory statement of his intention to pre-empt said land.

VI. That some time prior to the year 1860, one Robert Livermore and another had obtained the final confirmation in their names, under the laws of the United States, of that certain Mexican grant called "Las Pocitas;" that in the final decree of confirmation the land designated and described as belonging to said grant is stated as follows: "The land of which

confirmation is hereby made is known as Las Pocitas, and is bounded and described as follows, to wit, on the north by the Lomas de las Cuevas, on the east by the Sierra de Buenos Ayres, on the south by the dividing line of the establishment of San Jose, and on the west by the rancho of Don Jose Dolores Pacheco, containing in all two square leagues, a little more or less, provided that quantity be contained within the boundaries named, and if less than that quantity be contained therein, then that less quantity is hereby confirmed."

That as a matter of fact, the area of land embraced by the above-named boundaries is from ten to twelve square leagues, and embraces the greater portion of the land in the place known as the Livermore Valley, in said Alameda County, and said exterior boundaries embrace the land in controversy in this action.

That in the year 1869, the Surveyor-General of the United States, for the State of California, made an official survey of said grant, which purported to segregate all the land rightfully belonging to said grant—"Las Pocitas"—which survey embraced about two square leagues of land; that such survey became the final survey of said grant by the approval of the same by the Secretary of the Interior of the United States, on the sixth day of June, 1871, and a patent was issued by the United States, embracing the land contained in said survey—which patent was received by the claimants under said grant in full satisfaction thereof—and that such survey and patent does not embrace any portion of the land in controversy in this action.

That after the plat of survey of said township, embracing the land in controversy, had been returned to said local Land Office as aforesaid, on the first day of July, 1871, and within three months thereafter, the plaintiff, and those under whom he claims, being the purchasers of said land, and claiming the same under said State's selection and location, again presented said claim and fully proved up such purchase and claim, so far as the facts were concerned, to the satisfaction of the Commissioner of the General Land Office of the United States.

That at the same time said defendant French contested the claim of the plaintiff aforesaid before the officers of the Land

Departments of the United States, claiming the right to pre-empt said land as before stated; that upon such contest and investigation said Commissioner found, as matter of fact, that in the year 1863 the State of California selected and located said land under the laws of said State, and did thereafter sell and dispose of the same to the grantor of the plaintiff, as is hereinbefore more fully stated; and that on the seventeenth day of February, 1864, the grantor of the plaintiff became the purchaser in good faith of said land from the State under her laws, paid the purchase price, and received a certificate of purchase therefor, as hereinbefore stated. And said Commissioner found generally all the facts the same as they are stated in this complaint; and thereupon said plaintiff, and those under whom he claims, submitted said claim to said Commissioner, and asked that said land be certified over to the State of California, pursuant to said Act of Congress, entitled "An Act to quiet land titles in California."

That the only objection made to said claims on said contest and investigation, and the only objection which has ever existed thereto, was the fact that said land so selected and located, as aforesaid, was embraced by said exterior boundaries of the Mexican grant, " Las Pocitas," and that it was part and parcel of said ten or twelve square leagues aforesaid; that said contest and investigation was had long after said tract of land in question had been forever excluded from any claim under said Mexican grant, and at a time when the same was subject to disposition by the Commissioner aforesaid, as other public lands of the United States.

That upon such issue and question of law alone, the Commissioner of the General Land Office of the United States, and the Secretary of the Interior of the United States, both held and decided upon their construction of the said Act of Congress of July 23, 1866, that said land and claim was excluded from the operation and effect, and from the remedial and confirmatory provisions, and all the provisions of said Act of Congress, and solely because of the fact, and for no other reason than the following, to wit: because said land had been embraced by the exterior boundaries of said Mexican grant, and held or claimed under said grant until the sixth day of June, 1871; and thereupon and for that reason and no

other, said Commissioner of the General Land Office of the United States refused to approve said claim and refused to certify said land over to the State of California, but rejected said claim, and then and there awarded said land to the defendant, French, in virtue of his pre-emption claim aforesaid, and made an order permitting said French to enter said land under said pre-emption claim.

That afterward, and in pursuance of said decision, said French was permitted to, and did enter said land, and on or about the fifteenth day of August, 1876, in pursuance of said entry and decision, said Commissioner caused a patent of the United States to be issued and delivered to said defendant, Earl B. French, for said land—which patent transferred the title of said land to said French.

The plaintiff avers that the decision of the Commissioner and Secretary of the Interior aforesaid was and is contrary to law, and that in making such decision said officers were mistaken in the legal construction of said Act of Congress; that if said officers had decided said matter according to law, said selection and location and claim of the plaintiff would have been approved, and the land would have been certified over to the State of California pursuant to said Act of Congress of July 23, 1866, and the plaintiff would have been enabled to and would have acquired the legal title to said land under the laws of the United States and said State of California; that by reason of the acts of the defendant Sinclair as aforesaid, and the mistake of said officers as aforesaid, the plaintiff has been forever prevented and disabled from perfecting his title to said land under the laws of the United States and the laws of the State of California, to his great wrong and injury. That said plaintiff is now the owner and holder of said certificate of purchase of said land from the State of California, and the equitable owner of said land hereinbefore described as hereinbefore stated.

IX. That the other defendants named in the title of this complaint have, or claim to have, some interest in, or claim to, said land, holding, or claiming to hold, the same under or through said defendant, Earl B. French, as the plaintiff is informed and verily believes; but what the nature or character of such interest or claim is, the plaintiff is not fully in-

formed, and is therefore unable to state more fully than as aforesaid.

Wherefore the plaintiff prays that all of the defendants above named may be required to appear in this action and answer this complaint, and set forth fully the nature of their interest in or claim to said land. That it may be adjudged and decreed by this Court that the plaintiff is the equitable and rightful owner of said land, and that the legal title to the same now held by the defendant, Earl B. French, or either of the defendants herein, is so held in trust for the plaintiff. That it be further adjudged and decreed by the Court that the defendants convey said legal title to said land to the plaintiff herein, and that the legal title to said land may be conveyed to the plaintiff by said defendants, or by a Commissioner duly appointed by this Court, and that the plaintiff may have such further or other relief as may be meet and proper and agreeable to equity and good conscience, and may have and recover the costs of this action.

Duly verified.

*H. F. Crane* and *Edward J. Pringle* and *Sidney L. Johnson,* for Appellants.

Upon the facts stated in the complaint, the claim of the appellant should have been approved, and the land should have been certified over to the State, under the Act of Congress of July 23, 1866. (2 Lester. 180; *Huff* v. *Doyle et al.,* 93 U. S. 558.)

The case upon the complaint shows that upon the same state of facts as in the case above cited, the officers of the Land Department were mistaken in their construction of the Act of Congress, and thereby the appellant was denied a right to which, under the law, he was entitled. Where the officers of the Land Department have, by a mistake of law, given the title of land to one party which should of right have been given to another, a Court of equity will give relief, such as is prayed for herein. (*Johnson* v. *Towsley,* 13 Wall. 73; *Lindsey* v. *Hawes,* 2 Bl. 554; *Garland* v. *Wynn,* 20 How. 6; *Silver* v. *Ladd,* 7 Wall. 228; *Start* v. *Starrs,* 6 id. 419; *Bludworth* v. *Lake,* 33 Cal. 262; *Sulmon* v. *Symmons,* 30 id. 306; *Moore* v. *Robbins,* 96 U. S. 535.)

When the respondent, in 1870, went upon the land and ousted the appellant, he was an intruder and wrong-doer, and under such circumstances he should not have been permitted to intervene between the appellant and the United States, and it is inequitable now that he should retain the title thus acquired. (*Atherton* v. *Fowler*, 96 U. S. 513; *Wilkinson* v. *Merrill*, 52 Cal. 424; *Toland* v. *Mandell*, 38 id. 43; *Hodapp* v. *Sharp*, 40 id. 69; *Foscalina* v. *Doyle*, 47 id. 437; *Hosmer* v. *Wallace*, 97 U. S. 579.)

*Michael Mullany*, for Respondents.

Plaintiff states himself into open enmity with "equity and good conscience." Plaintiff states in his complaint that the eighty acres in controversy was held and claimed as part of a valid Mexican grant from "some time prior to the year 1860" (and necessarily from some time prior to the acquisition of California by the United States) until the sixth day of June, 1871. During this period of time the Mexican grantees were entitled to the exclusive possession of this tract, it being within the exterior boundaries of their grant. (*Ferris* v. *Coover*, 10 Cal. 621; *Mahoney* v. *Van Winkle*, 21 Id. 554, and many other subsequent cases.)

The complaint does not state facts sufficient to constitute a cause of action. The object of the action is to have defendant Sinclair declared to be trustee for plaintiff of the title to the land in controversy which was obtained from the United States by him as a pre-emption settler. If this case ever develops into such a trust, it was something never intended by either plaintiff or defendant.

It is directly averred that after full hearing of the claims of plaintiff's grantor and defendant Sinclair, before the officers of the United States Land Department, "and long after said tract of land in question had been forever excluded from any claim under said Mexican grant, and at a time when the same was subject to disposition by the Commissioner aforesaid, as other public lands of the United States," the land in controversy was awarded to defendant as a pre-emption settler, and a patent was issued to him. This single averment, supported by the dates stated in other averments, con-

cludes plaintiff. (*Huff* v. *Doyle,* 93 U. S. R. 558; 14 U. S. Stats. at Large, 218, §§ 1, 2, and 8.)

The complaint does not state facts sufficient to constitute even the State of California, under which plaintiff claims, into a trustee of the legal title, assuming the land to have been listed to the State instead of being patented to defendant, Sinclair. (*Grogan* v. *Knight,* 27 Cal. 515.)

*James C. Martin* and *Curtis H. Lindley,* also for Respondents.

It appears from the complaint, that the land was never listed to the State, and the fee of the land resided in the General Government until the patents were issued to the respective respondents. The State has no title which it can convey, until the land has been listed to it by the General Government. (*Collins* v. *Bartlett,* 44 Cal. 371; *Chant* v. *Reynolds,* 49 id. 213; *Hodapp* v. *Sharp,* 40 id. 73; *Churchill* v. *Anderson,* 53 id. 212; *Buhne* v. *Chism,* 48 id. 467.)

Until the State obtains a title, plaintiff is not entitled to a patent. There can be no question but that Congress had the power to confer upon the Land Department the exclusive jurisdiction to finally determine the validity of these State selections. (*Miller* v. *Little,* 47 Cal. 350; *Wilkinson* v. *Merrill,* 52 id. 424; *Mace* v. *Merrill,* 56 id. 554.)

The decisions cited by appellant, to the effect that where the officers of the Land Department have, by mistake of law, given the title of land to one party which should of right have been given to another, a Court of Equity will give relief, such as prayed for in this case, have no application to the case attempted to be made by plaintiff. Those decisions arose in contests between parties claiming title and patents from the same source, and under the general pre-emption laws, and not as in these cases, in which the plaintiff claims as a purchaser from the State, and as being entitled to a State patent, against the defendants, who have acquired United States patents as pre-emptioners; nor were those decisions made under the Act of July 23, 1866, by which the decision of the Land Department was expressly made final and conclusive upon all parties before it, and upon all questions of both law and fact.

The case of *Poppe* v. *Athearn,* 42 Cal. 606, is conclusive against the plaintiff's right to recover in this action.

McKEE, J.:

By the complaint in this case, the plaintiff seeks to charge the defendant as trustee of the legal title to a tract of land in Alameda County, known and described as the north half of the southeast quarter of section seven, township three south, range three west, Mount Diablo meridian. A demurrer to the complaint was sustained by the Court below, the plaintiff declined to amend, and, final judgment having been entered against him, he appeals.

Originally, as it appears from the complaint, the land formed a part of several leagues of land embraced within the exterior boundaries of a Mexican grant named Las Pocitas; and it stood in that position until June 6, 1871, when it was excluded from the grant by the confirmation of the final survey of the ranch.

On July 1, 1871, the Surveyor General of the United States for the State of California, having surveyed in the field the township within which the land was located, and sectionized and subdivided it, and constructed his survey into and upon a township plat, filed a duplicate of the township plat in the local land office in the district of San Francisco, within which the land was located; and the defendant, who was then and had been in possession of the land, residing upon and claiming it as a pre-emptioner, presented and filed in the local Land Office his declaratory statement of his intention to pre-empt the land under the pre-emption laws of the United States. Thereafter, and within three months after the township plat had been filed, the plaintiff, who also claimed the land as a purchaser from the State of California, presented and filed in the same office a claim to have the land certified over to the State for his benefit, pursuant to an Act of Congress entitled, "An Act to quiet land titles in California," approved July 23, 1866.

Upon these hostile and opposing claims a contest arose, before the officers of the Land Department of the United States, which was heard by the Commissioner of the General Land Office, and determined adversely to the plaintiff; and

the decision, on appeal, was affirmed by the Secretary of the Interior. By the decision the claim of the plaintiff was rejected; and, instead of certifying the land over to the State of California for his benefit, as, under the Act of July 23, 1866, the plaintiff claims the Commissioner and Secretary of the Interior were bound to do, they, in alleged violation of the provisions of that Act, awarded the land to the defendant under the pre-emption laws of the United States, and made an order permitting him to enter it under his pre-emption claim, and, upon his entry and payment of the purchase price of the land, caused to be issued and delivered to him a patent therefor on the fifteenth of August, 1876.

The plaintiff alleges that this decision was contrary to law, because he proved, in the investigation of the contest, to the satisfaction of the Commissioner of the General Land Office, and the Commissioner found, that, in the year 1863, the State of California, by its locating agent, selected and located the land in dispute in part satisfaction of the grant by the United States to said State of the sixteenth and thirty-sixth sections of land, in each township in said State, under an Act of Congress entitled "An Act to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes," approved March 3, 1853; and also in lieu of, and as indemnity for, certain of said sixteenth and thirty-sixth sections of lands in the State, or portions thereof, which had become lost to the State, under the terms and conditions of the Act of Congress; that the State, after it had so selected and located the land, sold and disposed of the same to the grantors of the plaintiff on the seventeenth of February, 1864, to whom, on payment of the purchase price "pursuant to the law of the State," the Register of the State Land Office issued and delivered a certificate of purchase, under and by virtue of which the purchasers entered into possession of the land and continued in possession until September 24, 1870, when the defendant intruded upon their possession, and from that date has continued in the undisturbed possession of the same. But the plaintiff, and those under whom he claims, "some time in 1866," presented to the Register and officers of the local Land Office of the United States the State selection and lo-

cation and their claim of title thereunder; and the same was, by the Register, noted and entered in writing upon the tract-book of the local Land Office, and upon the tract-books of the general Land Office of the United States, at Washington, whereby the officers of the Land Department had notice of the equitable rights of the plaintiff.

Upon these proofs and findings, the plaintiff claims that the land should have been certified over to the State for his benefit; and that he is now entitled to the patent, which, upon the erroneous decision of the Commissioner and Secretary of the Interior, has come into the hands of the defendant.

There is no doubt that where the party has obtained from the United States a patent to a tract of public land, which, in equity and good conscience, and by the laws which Congress has passed on the subject, ought, upon a true construction of those laws, to go to another who establishes a prior right to it, that a Court of equity will control the patent in favor of the prior equity, and compel a conveyance of it to the owner of the equity. (*Johnson* v. *Towsley*, 13 Wall. 72; *Silver* v. *Ladd*, 7 id. 228; *Garland* v. *Wynn*, 20 How. 6; *Lindsey* v. *Hawes*, 2 Black. 554). But to entitle the claimant of a patent issued to another to equitable relief, he must show such a right to the premises described in the patent as, in equity and good conscience, and according to the laws of Congress upon which he relies, entitles him to the patent. Coming into a Court of equity, asking for the interference of equity, he must not only show an equitable right to relief, but he must offer to do equity. He must show a reason valid in conscience, as well as an equitable title enforceable in a Court of chancery.

Now it will be observed, that the basis of the claim asserted by the plaintiff rests upon the Act of Congress passed July 23, 1866. By that Act Congress undertook to confirm to the State all selections of any portion of the public domain, made by her in part satisfaction of any congressional grant, and which she had disposed of to purchasers in good faith under her laws. Certain lands were excepted from such confirmation, among which were lands covered by a Mexican or Span-

ish grant at the time of the selection. But if such lands were afterwards excluded from the grant, and became part of the public domain of the United States, they were made subject to the selection and to confirmation when the United States surveys were extended over them. (*Huff* v. *Doyle,* 93 U. S. 558.) To this last class of lands the land in dispute belonged. It was not surveyed by the United States until 1871, and the official plat of the survey was not filed in the proper Land Office until the twenty-eighth of June, 1871. On that day the land became and was part of the public domain of the United States, and, for the first time, it was open for settlement as other public lands of the United States, to the plaintiff, claiming as a purchaser under the State laws under the Act of Congress, or to the defendant, who was then in possession of it, claiming the right to pre-empt it under the pre-emption laws. (*Rich* v. *Maples,* 33 Cal. 109; *Mahoney* v. *Van Winkle,* id. 448; *Newhall* v. *Sanger,* 92 U. S. 762.) When it became public land, the claims to it of both the plaintiff and defendant depended upon the respective congressional enactments under which they were presented to the Land Office. Neither of the parties acquired any equitable right to the land by the mere assertion of his claim. It was necessary for each to establish his right by making the proof required by the law under which he asserted it; and by showing a compliance with its terms and conditions.

Originating, as did the right of the defendant, in the possession which he had of the land at the date of the filing of the official plat, his settlement gave him the status of pre-emptioner under the pre-emption laws. At the same time the Act of Congress of July 23, 1866, extended to a purchaser in good faith from the State, whose right originated in selection and location under the State laws, the same pre-emption rights. Both *bona fide* purchasers from the State and pre-emption claimants under the United States were placed by the Act on the same footing as to the acquisition of title. The object of the Act, as has been said by our predecessors in *Toland* v. *Mandell,* 38 Cal. 30, " was to legalize the *possession of locators* upon unsurveyed lands until they have opportunity to present their claims for determination by the officers of the United States, as provided by the Act,

and to enable them to maintain actions in the Courts in relation to it." (*Foscalina* v. *Doyle*, 47 Id. 437.) As residence and cultivation precede entry by a pre-emptioner, under the pre-emption laws, so selection and location upon public lands are necessary to the claim of a *bona fide* purchaser from the State under the Act; cultivable lands belonging to the State are grantable only to actual settler. (*Johnson* v. *Squires*, 55 Id. 103.) The plaintiff admits that the State's selection was void, and that by it alone he acquired no right. He has, therefore, no equitable right to the land, unless the alleged selection and location have been recognized and ratified by the provisions of the Act of 1866, and he has shown such a compliance with its terms and conditions as entitled him to the benefit of the Act.

That Act undertook to confirm selections made by the State upon two classes of land: 1. Lands which had been surveyed by the authority of the United States; and, 2. Lands which had not been so surveyed. Section 2 provides, as a condition precedent to confirmation of selections upon surveyed lands, for a notice of such selection to be given by the " proper State authorities" to the Register of the United States Land Office. The law made the selection when this notice was given; and upon being given, it became the duty of the Register to investigate and determine the claim, and if found to be for land to which the State would be entitled by the grant under which the claim of selection is made, the proper officer of the United States Land Office was authorized to certify it over to the State, if the State had not already received the quantity of land that she was entitled to, under her grant, as provided by Sections 1 and 2 of the Act.

But if selections had been made upon unsurveyed lands, such selections, when surveyed, and marked off and designated in the field, gave, according to the provisions of Section 3 of the Act, to a purchaser in good faith under the laws of the State, the pre-emption rights of a settler on the unsurveyed lands; and upon the filing of the township plat in the proper local Land Office, the State claimant was allowed the same time as a pre-emptor to present and prove up his purchase and claim under the Act.

Now, the alleged selection must have been made on sur-

veyed or unsurveyed land.  If made on unsurveyed land, the complaint of the plaintiff fails to show that the "proper authorities of the State" had notified the Register of the proper Land Office of the selection; and neither that officer nor any other officer of the Land Office, was bound by the Act to certify the land over to the State.  The complaint is also uncertain as to whether the claim of the plaintiff is asserted upon a selection made on surveyed or unsurveyed land; for while the complaint contains averments which show that, at the date of the selection, the land had been surveyed in the field by the proper officer, and that a record of the survey and plat thereof was made and filed, but was afterwards withdrawn, it also shows that the land did not become part of the public domain until it was excluded from the Mexican grant, within the exterior limits of which it was at the time of the alleged survey, and it was not subject to selection under the Act of Congress until the filing of the official plat.

Besides, whether the land was surveyed or unsurveyed, it was necessary for the complaint to show by proper averments that the plaintiff, in the assertion of his claim to the land proved that he had purchased it in good faith from the State; that it had been selected and located under the laws of the State as part of the surveyed or unsurveyed lands of the United States, which were subject to be so selected; and that he had complied with the terms and conditions of the Act of Congress which ratified the selection.  (*The Secretary v. McGarrahan*, 9 Wall. 298.)  These constituted the elements of his asserted equitable right.  But upon all of them the complaint is uncertain and insufficient.  It is not alleged, nor does the plaintiff claim, that he purchased the land directly from the State, or that he ever located on it, or occupied or improved it, or paid or contracted to pay the State for it.  On the contrary, it is alleged that the land was purchased from the State by his grantor or grantors, to whom, after making a payment, pursuant to the laws of the State, which required a payment of twenty per cent of the purchase, a certificate of purchase was issued, under which they occupied the land until 1870, when they were dispossessed by the defendant, who has ever since continued in the unques-

tioned and undisturbed possession of the land. And, except so far as it may appear from the averments of the legal conclusions that they were *bona fide* purchasers under the law of the State, and that a certificate of purchase was issued to him, it does not appear, from any allegations in the complaint, that they had complied with the laws of the State so as to constitute them *bona fide* purchasers from the State. It might be that the authorities of the State had refused to notify the Register of the Land Office of the selection of the land, as they were bound to do by the second section of the Act of Congress, just because the alleged purchasers had not complied with the State laws; and *non constat* that the State would have conveyed to them the land if it had been selected. Averments of legal conclusions in a pleading do not obviate the necessity for a statement of the facts which are essential to constitute a right claimed under a statute. It is true, that under the laws of the State the certificate of purchase was made evidence of the legal title; but having been issued for land which was not public land, and had not been surveyed by the United States, the certificate was void. (*Young* v. *Shinn,* 48 Cal. 26.) Being void, it was not in itself evidence of that location on the land, and that purchase of it from the State and payment for it which would constitute them *bona fide* purchasers.

To constitute them such, as against the patentee of the United States, to whose title they assert a better right, it would be necessary for them to allege in their pleading that in the contest for the land before the Land Department they not only produced their certificate of purchase, but they also proved, and there was "found" the performance of the series of acts required by law to entitle them to the certificate and the steps which had been taken to complete the purchase from the State, so as to entitle them to a patent from the State. (*Laughlin* v. *McGarvey,* 50 Cal. 169; *Cadierque* v. *Duran,* 49 Id. 356; *The Secretary* v. *McGarrahan, supra.*) Unless these things were proved and "found" they would fail to show in themselves that better right in favor of which a Court of equity would interpose to control the right of the patentee; and one who claims simply, and by no other right

than as assignee of their void certificate of purchase, is in no better position.

Moreover, it does not appear by any allegation in the complaint *when* the assignment of the certificate of purchase was made—whether before or after the contest before the Land Department—nor is it alleged that it was proved or found that the plaintiff was the owner and holder of the certificate, or a *bona fide* purchaser of the land in good faith and for a valuable consideration from the State.

He filed the complaint in this case in April, 1878, and all that he alleges on that subject is "that he is *now* the owner and holder of the certificate of purchase." Inferentially, therefore, he did not become the owner and holder of it until after the decision of the Land Department. If he purchased after that, he bought with notice of the possession of the defendant, of the judgment in his favor, and of the issuance of the patent; and as a purchaser of the certificate from the alleged original purchasers from the State, with notice of those things, he is not a *bona fide* purchaser from the State, within the meaning of the Act of Congress.

But whether the purchase of the void certificate was made before or after the contest before the officers of the United States Land Department, as the plaintiff had never located on the land, never occupied or improved it, never paid or contracted to pay for it, to the United States or the State of California, it would be neither according to equity nor good conscience to compel the defendant to convey to him the legal title.

Furthermore, there is no allegation in the complaint that the land for which it is alleged that the land in dispute was selected, has been lost to the State. Presumably, therefore, those lands were in place, and the land in dispute was not subject to selection, or if subject to selection, the right of selection had not accrued, because land within the exterior limits of a Mexican grant did not, under the Act of July 23, 1866, become subject to selection until it had been excluded from the grant, and the lines of the survey by the United States had been extended over it, and the Surveyor-General of the United States for the State had furnished the State

with an official list of the sections of land which were within a reservation, or private grant, or settled upon, and, in consequence thereof, were lost to the State. (§ 6, Act July 23, 1866.) Such an official list was made necessary as the basis of selection of land in lieu of those lost sections, and until it was furnished, the right to select had not accrued, and the land in dispute was not subject to selection. (*Sherman* v. *Bruick*, 93 U. S. 209.)

It follows that the plaintiff has not, by his complaint, brought himself into such relations with the land in controversy as entitles him to call in question the decision of the United States Land Department awarding the land to the defendant, or to control the patent which was issued to him.

Judgment affirmed.

Myrick, Sharpstein, McKinstry, JJ., and Morrison, C. J., concurred.

In *Jose Aurrecoechea* v. *Joseph L. Bangs et al.*, No. 7,447; *Jose Aurrecoechea* v. *George Gerke et al.*, No. 7,448; *Jose Aurrecoechea* v. *Amos L. Bangs et al.*, No. 7,449; *Jose Aurrecoechea* v. *Earl B. French et al.*, No. 7,470; and *Jose Aurrecoechea* v. *John W. Clark et al.*, No. 7,483, the judgments were upon demurrer to complaints similar to that in *Aurrecoechea* v. *Bangs*, No. 7,251, reported *supra;* and were affirmed upon the authority of that case.