## JOHN N. KEERAN *v.* JOHN GRIFFITH.

EVIDENCE THAT LAND IS SWAMP AND OVERFLOWED. — A patent issued by the State for land sold by the State as "swamp and overflowed" upon its own survey, without the concurrence of the United States, and which describes the land as "swamp and overflowed," is neither presumptive nor *prima facie* evidence that such was the character of the land, as against one claiming under the United States.

SWAMP LANDS.—Neither the General Government nor the State, while proceeding separately to determine whether land is swamp and overflowed, is bound by the acts of the other.

EVIDENCE THAT LAND IS SWAMP OR OVERFLOWED.—Until the General Government and the State concur in determining what lands are "swamp and overflowed," the question whether a given subdivision is "swamp and overflowed," as between parties claiming adversely under the State and General Government, is to be determined, not upon official certificates or patents of either the State or General Government, but upon evidence of the actual condition of the land September 28th, 1850, the date of the grant to the State.

MAP OF UNITED STATES SURVEY.—A map of the United States survey, approved by the Surveyor-General of the United States, which designates a particular subdivision of land as high land, is not evidence tending to show that the land was not "swamp and overflowed" as against one claiming under the State.

CHARACTER OF SWAMP AND OVERFLOWED LAND.—If land is not susceptible of cultivation in grain or other staple productions, by reason of overflow, it is "swamp and overflowed," and the fact that after the annual overflow a crop of grass will spring up which will make hay does not prevent it from being "swamp and overflowed."

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

Plaintiff claimed under a patent issued by the State to his grantor, from which it appeared that the State had sold the land as swamp and overflowed. Defendant claimed under

the Federal Homestead Act, and denied that the land was swamp and overflowed. On the trial plaintiff, to maintain the issue on his part, offered in evidence a patent issued by the State to his grantor. Defendant objected to the patent being received until it was first shown that the land was "swamp and overflowed" within the true meaning of the Act of Congress of September 28th, 1850. The Court overruled the objection.

The defendant, to maintain the issue on his part, offered in evidence a map of the United States survey, approved by the Surveyor-General, in which the demanded premises were described as high land. Plaintiff objected, and the Court sustained the objection.

The Court instructed the jury as follows :

" The patent is *prima facie* evidence that the land is swamp and overflowed land within the grant to the State of September 28th, 1850, and that the plaintiff, deriving title under it, has a valid legal title to the land, and the burden of proof to show that the land is not of that character, and that the patent is not, therefore, valid and legal, is cast upon the defendant."

Plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*George W. Tyler*, for Appellant, argued that the Court erred in charging the jury that the patent was *prima facie* evidence that the land was "swamp and overflowed," as a State patent was not such evidence, except where the contest was between the patentee and a naked trespasser who did not claim under the United States.

*John B. Hall*, for Respondent, argued that the patent was the record of the State that the character of the land was such as to render it the property of the State, and that the recitals of the patent as to the land being "swamp and overflowed"

must be treated as true until their falsity was established by the opposite party; and cited *Keeran* v. *Griffith*, 27 Cal. 87; and *Marsh* v. *Brooks*, 8 How., U. S., 223.

By the Court, RHODES, J.:

This case was formerly before the Court, and is reported in 27 Cal. 87. On that appeal it was held that the Court erred in instructing the jury that the character of the lands, as to their being dry lands, or swamp and overflowed lands, was conclusively established by the survey made under the authority of the General Government. The complaint now comes from the other party, the defendant, who contends that the Court erred in admitting the patent from the State as "presumptive evidence that the land was swamp and overflowed land," and in instructing the jury that the patent was *prima facie* evidence that the land was of that character.

The learned Judge erred, we think, in assigning to the patent any value as evidence of that fact as against the defendant, who claimed under the United States by virtue of the Homestead Act of 1862. It was held on the previous appeal that while the State is proceeding by herself and through her own officers in determining the position and extent of the swamp and overflowed lands, and the General Government is also proceeding independently of the State in determining the same matter, "neither of the parties is bound by the action of the other." And in concluding the opinion of the Court, Mr. Justice SHAFTER says

"In cases like the one at bar, the question will be, as it is here, a question of fact: Were the lands 'swamp and overflowed' on the 28th of September, 1850, the date of the Government grant? And that question must always be responded to by the jury on evidence submitted to them and applicable to the question."

The same construction is given to the Act of Congress at the General Land Office. The Commissioner, in his instruc-

tions (see Lester's Land Laws, p. 551) says: "If any of the lands properly inuring to the State under this law, as explained above, have heretofore been claimed by the State, and that claim rejected from any cause, such rejection cannot and does not impair the right of the State to such lands, and therefore, if the claim is again presented you will examine and determine it under the foregoing instructions." Those instructions were to take the testimony of witnesses produced to prove the character of the land. (See also Id. 560.)

Until the General Government and the State Government concur in the adoption of a system, by which the swamp and overflowed lands to which the State is entitled by virtue of the Act of Congress, may be ascertained, and under it designate and select the land, the question whether a given subdivision of land is within the Act will remain a question of fact, to be determined, not upon official certificates, but upon evidence that would be competent to prove the fact if it arose in issue upon a conveyance between private persons. And we do not undertake to say that the action of the two Governments in that behalf will preclude a person claiming under either Government by right or title having its origin previous to such action, from showing the truth as to the character of the land claimed by him.

The Court ruled correctly in excluding the map approved by the Surveyor-General, when offered by the defendant, as proof on that question, and it was in accordance with our opinion on the former hearing, and also that in *Robinson* v. *Forrest*, 29 Cal. 317. And if that ruling can be sustained—and we have no doubt on the point—how can any greater force or effect be conceded to the official acts of the State officers, as evidenced by a patent, than to those performed by the officers of the General Government, as exhibited by the survey and map? Neither of them is entitled to be considered as *prima facie* evidence of the fact in question, as against those claiming under the other Government. It is unnecessary to express an opinion as to whether the patent was admissible, at the time it was offered, as presumptive evidence

of the character of the lands, the defendant not having then introduced any evidence in support of his claim to the benefits of the Homestead Act; but after he had produced evidence for that purpose which tended to connect him with the title in the General Government, it was erroneous to instruct the jury that the patent was *prima facie* evidence against him, that the land was swamp and overflowed land. The exclusion of the patent as evidence on this point does not impair its value for any other purpose.

As the cause must be remanded for a new trial, it is proper to pass upon a question that will again arise in the Court below—the one in relation to the second instruction requested by the defendant. He contends that although the land may be subject to an annual overflow, so as to render it unfit for cultivation, yet if it will produce an annual crop of hay, of any description, that bears a market value, it is not to be taken as swamp and overflowed land.

This is not the construction put upon the words of the Act, "swamp and overflowed" and "wet and unfit for cultivation" by the Commissioner of the General Land Office. In his circular of the 11th of February, 1856, (Lester's Land Laws, p. 545,) he requires proof that the land is not "susceptible of cultivation in grain or other staple productions" by reason of the overflow. It is not enough that a crop of grass may spring up after the overflow subsides, for there are but few tracts of land that are rendered barren by annual overflows, and yet they might be unfit for the cultivation of staple productions, without protection by levees. The comparative value of the productions, when the land is reclaimed and when unreclaimed is not the test; but if it is unfit for cultivation in grain or other staple productions by reason of the overflow, it is regarded as swamp and overflowed land. Under the construction contended for, the State would lose nearly or quite all benefit of the grant of overflowed land, for no overflowed land would vest in the State except that which was rendered

not merely unfit for cultivation, but worthless by the over-flow.

Judgment reversed and the cause remanded for a new trial.