## JOHN N. KEERAN v. FRANCIS R. ALLEN.

FEDERAL HOMESTEAD ACT.—If a State has sold land as swamp and overflowed to one person, and the same is claimed as a homestead under the Federal Homestead Act by another, the land, if not swamp and overflowed, is not taken out of the operation of the Homestead Law by the Acts of Congress for the relief of purchasers and locators of swamp and overflowed lands, passed March 2d, 1855, and to confirm to the several States the swamp and overflowed lands, approved March 7th, 1857.

HOMESTEAD AND PRE-EMPTION CLAIMANTS.—The rights of claimants under the pre-emption and homestead laws of the United States are not affected by the Act of Congress of July 23d, 1866, entitled "An Act to quiet land titles in California."

WHAT IS SWAMP AND OVERFLOWED LAND.—If land subject to overflow was, September 28th, 1850, such that annually, after the subsidence of the water, a crop of either wheat, rye, barley, oats, corn, buckwheat, peas or beans could be raised on it, it was not swamp and overflowed within the meaning of the Act devoting such land to the States.

PROOF THAT LAND IS SWAMP AND OVERFLOWED.—In trying the issue whether land is swamp or overflowed, if the same has not been cultivated, evidence may be introduced to show that crops may be raised on land in the neighborhood similarly situated.

EVIDENCE, IMPROPERLY ADMITTED.—The appellant cannot avail himself of the point that testimony was improperly admitted, unless he objected to it below and excepts.

PATENT AS EVIDENCE.—A patent from the State for land sold as swamp and overflowed is not *prima facie* evidence that the land is such, as against one claiming under the General Government.

WHEN COURT WILL NOT REVIEW EVIDENCE.—When there has been no motion for a new trial, the appellate Court will not review the case upon the evidence.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

This was an action to recover the southeast quarter of Section Number Seven, in Township Number Three South, Range Number Seven East, Mount Diablo Meridian. The plaintiff claimed in his complaint that he was the owner of the land on the first day of December, 1863, and since had been. The defendant in his answer claimed that on or about the 18th day of November, 1863, the land was open to preemption and homestead settlement, and that he then settled upon it, and had performed every act required of him to be performed to perfect his homestead title.

For the purposes of this appeal, the parties agreed to the statement of facts following, to wit:

On the 15th day of January, 1856, a patent by the proper authorities of the State of California for the land in dispute, was issued to George W. Trahern. The survey upon which said patent was issued was made in the year 1855. The proceedings resulting in such patent were had under the several Acts of the State concerning swamp and overflowed lands; and such proceedings were all regular on their face, and said patent conveyed to said Trahern the legal title to said land, if the same was swamp and overflowed land, made thereby unfit for cultivation, within the meaning of the Act of Congress of 28th September, 1850, entitled "An Act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits." Geo. W. Trahern, by sufficient deed, on the first day of December, 1863, sold the land to the plaintiff. The defendant was in possession of the land, claiming it as a homestead under the Federal Homestead Act. On the 27th of November, 1863, he applied to the local United States Land Office at Stockton, to be allowed to enter the land under and by virtue of the Federal Homestead Act, and such proceedings were had that he was allowed by said Register to make said entry. A survey embracing said land was made by the United States Surveyor General

for the State of California, in December, 1854, and approved by him June 15th, 1857, and returned to the Register of the Stockton Land District on     day of     1857, and filed by him.

The defendant was allowed to prove on the trial that other land near the land in dispute, and similarly situated, produced buckwheat and oats in the summer and fall, which were planted after the subsidence of the winter and spring rains. The plaintiff excepted.

The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*John B. Hall,* for Appellant.

An entry for homestead can only be made of "*unappropriated* public lands," subject to pre-emption. The homestead right will take effect only on land to which a right of preemption has attached or may attach, so that the settler may, at his will, convert the claim of the former into one of the latter class. (See Secs. 1, 2, 8, of Homestead Act of May 20th, 1862.) Any lands which are reserved by Act of Congress, for whatever purpose, are not open to the right of preemption, nor, as a consequence, to the right of homestead. They are not "liable to entry." (See Pre-emption Act of September 4th, 1841; Lester's Land Laws, Sec. 10, pp. 61–2.) The land in controversy was appropriated reserved land at the date of defendant's settlement and entry. It was claimed and sold by the State as her land under the swamp land grant many years prior to the defendant's entry for homestead; the sale by the State being in January, 1856, and the entry for homestead in April, 1864. Under the Act of Congress of March 2d, 1855, entitled "An Act for the relief of purchasers and locators of swamp and overflowed lands," a patent cannot issue by the General Government for land thus situated "until such State, through its constituted authorities, shall release its claim thereto." This Act

was " extended [by another of March 3d, 1857,] to all entries and locations of lands claimed as swamp lands made since its passage." (See Lester's Land Laws, No. 275, p. 268; Ib., No. 319, p. 285.)

The land is confirmed to the State, and her title, resting in the plaintiff, made perfect by the operation of the Act of Congress of July 23d, 1866, entitled " An Act to quiet land titles in California." The first section confirms to the State " all selections in part satisfaction of the grant made to said State by any Act of Congress," and where the State has disposed of such land to *bona fide* purchasers; provided, the selections were not contrary to existing laws.

The legal test for determining what were swamp and overflowed lands, which the Court declared should govern the jury in forming a verdict, is a false test, and is not sustainable by correct and received rules of interpreting the legislative will, nor by the construction and practice of the Land Department of the Government.

If Congress meant to donate no land except it were disqualified for crops of *every kind*, language plainly indicating that purpose would have been employed, instead of leaving as now the extent of the gift (according to respondent's proposition) determinable by tests as numerous as the varying products of the planter, the farmer and the gardener, from the differing soils, and the dissimilar climates within the borders of the whole Union.

[No brief on file for Respondent.]

By the Court, SHAFTER, J.:

Questions arising in this case were passed upon by us in 27 Cal. 91, and in 31 Cal. 461. The case comes here upon an appeal from the judgment, aided by a statement of errors alleged to have occurred at the trial.

The plaintiff made title to the premises as swamp and

overflowed lands under a patent from the State. The defendant claimed them under the Homestead Law of 1862, and introduced evidence, subject to objection, tending to prove an equitable right to the land under said Act, as against the Government. The objection to the evidence was that "the land was not subject to entry as homestead, because taken out of the operation of the Homestead Law by an Act for the relief of purchasers and locators of swamp and overflowed lands, passed March 2d, 1855, and an Act to confirm to the several States the swamp and overflowed lands, approved March 7th, 1857. (See Lester's Land Laws, Nos. 275, 319.)

We have given these Acts an attentive examination. As to the Act of 1855, its purpose and effect have been so clearly misapprehended that the error could not be made more manifest than it is on the face of the statute, by any amount of exposition; while, as to the Act of 1857, the confirmation, provided for herein, is expressly limited to selections of swamp and overflowed lands "theretofore made and reported to the Commissioner of the General Land Office." There is nothing in the record showing that the lands in controversy were ever reported as State selections to the Commissioner; and the confirmation asserted must fail for that reason.

Second—The further claim that the premises were confirmed to the State, and that its title, resting in the plaintiff, was made perfect by the operation of the Act of Congress of July 23d, 1866, entitled "An Act to quiet land titles in California," is equally unfounded. The rights of claimants under the pre-emption and homestead laws of the United States are not affected by the confirmation for which the Act provides, but are expressly saved therefrom by the first section of the Act.

Third—The Court instructed the jury that "if, at the date of the grant, September 28th, 1850, the land was such that, regularly and annually, after the subsidence of the waters, a crop of either wheat, rye, barley, oats, corn, buckwheat, peas or beans could be successfully cultivated and produced, then the land was not rendered unfit for cultiva-

tion by reason of the overflow, and that the defendant was, in such case, entitled to a verdict."

We held in *Kernan* v. *Griffith*, 31 Cal. 461, that the lands covered by the State patent could not be regarded as " overflowed," unless, by reason of the periodical overflow to which they were subjected, they were rendered, in the language of the grant, " unfit for cultivation." We furthermore held that if, after the subsidence of the waters, "grain or other staple crops could be raised on the land," it could not be considered swamp and overflowed. The Court below accepted this rule as the true test of the fitness of the land for cultivation; and, assuming grain as a staple crop, added certain other products to it as bearing that character. We consider all of them to be staple in character. They are all raised largely for home consumption, and they are all of commercial value and importance. Any distinction taken between them must be fanciful in the main.

While the question of " unfitness for cultivation " should be solved with a proper reference to principle, still, for the purposes of exactness and uniformity in judicial administration, it is desirable to subject it to some test which juries can readily appreciate and apply. To that end, the capacity of the land to produce a staple crop as the result of cultivation was hit upon by the Land Office at an early day, as a test by which to determine the character of the land, as wet or dry (Lester's L. L., 547); and this test has been steadily adhered to ever since. We do not now feel at liberty to set it aside as fallacious, nor even to modify it, and certainly not for the reason adduced in argument, that a rule might be adopted more favorable to the State.

Fourth—The point that the testimony of persons who had no knowledge of the lands in suit, concerning the capability of other and remote lands for cultivation, was improperly admitted, is not available, for the reason that the evidence was received without objection.

Fifth—The instruction that the patent was not *prima facie* evidence as against the defendant, a claimant under the

Government—that the lands were swamp and overflowed, in fact—was correct.    That point was decided in 31 Cal. 463.

Sixth—There was no motion for a new trial, and the case therefore cannot be reviewed upon the evidence.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.

By the Court, SAWYER, C. J., on petition for rehearing:

We overlooked the statement of one ground of error in consequence of its not being stated in immediate connection with the others, where they were collected together and numbered.    But the difficulty is, there was no objection or exception to the admission of the evidence.    There was, however, no error in admitting the evidence complained of. It not appearing that the land itself had been cultivated, for the purpose of showing that staple crops could be annually raised upon it, notwithstanding the fact that it was sometimes overflowed, it was shown that other lands in the neighborhood, similarly situated, but still lower and subject to be more deeply overflowed, and therefore less fit for cultivation, produced staple crops.    This was proper.    If other lands of the same kind in the same locality proved to be in the same or worse condition with reference to the annual overflows, produce staple crops, this tends to prove that the land in question would do the same; and in the absence of actual experiment upon the land itself, is the only reasonably certain evidence of the fact.    It is certainly better than mere opinion.    We see nothing else in the petition requiring further consideration.

Rehearing denied.