[No. 11735.   Department Two. — July 1, 1887.]

SILAS TUBBS, RESPONDENT, *v.* R. E. WILHOIT ET AL., EXECUTORS, ETC., OF JOSEPH KILE, DECEASED, APPELLANTS.

SWAMP AND OVERFLOWED LANDS — ACT OF SEPTEMBER 28, 1850 — GRANT
    IN PRÆSENTI. — Section 1 of the act of Congress of September 28, 1850,
    commonly called the swamp-land act, is a grant *in præsenti* to each
    state of the swamp and overflowed lands within its limits. The pro-
    vision made in the second section of the act for a patent is for the pur-
    pose of furnishing to the grantee documentary evidence that the land
    was swamp and overflowed, and a further assurance of title.
ID. — PLAT OF SURVEY OF TOWNSHIP — APPROVAL BY SURVEYOR-GENERAL
    — CONCLUSIVENESS AS TO CHARACTER OF LAND — VESTING TITLE. —

73   61
83  283
83  546

73   61
87  375

73   61
88  277

73   61
106  488

Under section 4 of the act of Congress of July 23, 1866, quieting land titles in California, the plat of the survey of a township, having lands represented thereon as swamp and overflowed, upon being approved by the United States surveyor-general for California, is conclusive between the state and the United States as to the character of the lands so represented, and vests the title thereto in the state, as of the 28th of September, 1850, the date of the passage of the swamp-land act; and this result follows, although the commissioner of the general land-office has neglected to certify the land over to the state as swamp and overflowed, as required by the act of July 23, 1866. After the plat has been so approved, the United States land department has no power to determine that the land represented thereon as swamp and overflowed is not of that character, or to dispose of the same under the homestead or preemption laws.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion of the court.

*J. B. Hall,* for Appellants.

*James H. Budd,* for Respondent.

THORNTON, J. —This is an action of ejectment.

The plaintiff's title is founded on a patent of the United States, issued on homestead entry, commuted to a cash entry, which entry was made on the 8th of May, 1873. On this last-named day whatever right the plaintiff had attached.

The defendant's title rests on a patent of the state of California, issued to one Joseph Kile on the fifth day of August, 1865, for the land in controversy purchased by said Kile from the state, on an application to purchase made to the proper state authorities in the month of August, 1864.

The plaintiff claims that the land is and was dry land on the 28th of September, 1850, the date of the passage of the swamp land act, while defendants (who are the executors of Kile) claim that it was swamp and overflowed land at the date just above mentioned, and that

it was conclusively determined to be such before any right of plaintiff attached.

It appears from the findings that in April, 1864, a plat of the survey of the township in which the land in controversy is situated was approved by the United States surveyor-general for California. On this approved township plat, the land in suit was represented to be swamp and overflowed.

On the 23d of July, 1866, an act of Congress, entitled "An act to quiet land titles in California," was passed. The fourth section of that act provides, among other things, as follows: "That in all cases where township surveys have been, or shall hereafter be, made under the authority of the United States, and the plats thereof approved, it shall be the duty of the commissioner of the general land-office to certify over to the state of California, as swamp and overflowed, all the lands represented as such upon such approved plats, within one year from the passage of this act, or within one year from the return and approval of such township plats."

It must be considered as settled law that the first section of the swamp-land act is a grant *in præsenti* to each state of the swamp and overflowed lands within its limits. "The words of the first section of the act," say the Supreme Court of the United States, in *Wright* v. *Roseberry*, 121 U. S. 488, by Field, J., "'shall be and are hereby granted,' import an immediate transfer of interest, not a promise of transfer in the future." The provision made for a patent in the second section is for the purpose of furnishing to the grantee documentary evidence that the land was swamp and overflowed, and a further assurance of title. (See *Owens* v. *Jackson,* 9 Cal. 322; *Summers* v. *Dickenson,* 9 Cal. 554; *Kernan* v. *Griffith,* 27 Cal. 87; *Sacramento Valley Rec. Co.* v. *Cook,* 61 Cal. 342; *Lux* v. *Haggin,* 69 Cal. 255; *French* v. *Fyan,* 93 U. S. 169; *Wright* v. *Roseberry,* 121 U. S. 488, and cases cited.)

To make the grant perfect, the lands must be identified as of the character granted. When the land was clearly swamp and overflowed, it could be clearly identified as such by parol evidence. In most cases such identification from the character of the lands could be made without difficulty. In some instances it might not be so easily done, and Congress provided in the act of 1850 for a mode of identification by the secretary of the interior. This action by the secretary of the interior, in identifying the land as swamp and overflowed, is conclusive against collateral attack, as the judgment of a special tribunal to which the determination of the matter is submitted; and when the secretary has neglected or failed to make the identification, it is competent for the state or its grantees, to prevent their rights from being defeated, to identify the lands in any other appropriate mode which will effect that object, as by a resort to parol evidence. (*Wright* v. *Roseberry,* 121 U. S. 488, and cases cited.)

But Congress has furnished other modes of identification, and one of those is set forth in the portion of the fourth section of the act of 1866 above quoted. (*Wright* v. *Roseberry, supra.*)

That the township plat was approved in this case long before any right of the plaintiff attached, clearly appears from the findings. A copy of the plat approved by the United States surveyor-general for California was filed in the United States district land-office at Stockton, in which district the land in suit was included, on the 1st of July, 1864. This copy was afterward, on or about July 15, 1865, withdrawn from the office by the surveyor-general above mentioned by order of the commissioner of the general land-office, and was never returned to that office, but an exact copy of it was subsequently filed in the United States land-office for the district then embracing, with other lands, the land in controversy.

We think it clear from the above that the plat must

be considered as approved, at least as soon as when first filed in the land-office in Stockton.

From the day of filing an approved township plat in the proper land-office, the time for making applications to enter and purchase commences to run. From such date rights may attach in favor of those applying to enter and purchase under the laws of the United States, and certainly such rights would not be allowed to attach, unless upon a township plat approved by the proper authority. Under these circumstances the township plat may be considered as approved at latest as of July 1, 1864.

Under such a state of facts, what effect on the title to this land has the above-quoted portion of the act of July 23, 1866? We are of opinion that the plat of the survey of the township, including the lot in controversy, approved by the United States surveyor-general for California, was conclusive between the state and the United States, and vested the title in the state of California as of the 28th of September, 1850, the date of the passage of the swamp-land act.

This conclusion is, in our opinion, sustained by the recent decision of the Supreme Court of the United States in *Wright* v. *Roseberry*, above cited. This case went to the court above mentioned by writ of error to this court. The action was ejectment. The plaintiff contended that, by virtue of the provisions of section 4 of the act of July 23, 1866, there having been an approved plat of survey, the title to the land in suit, claimed by plaintiff to be swamp and overflowed land, vested in the state, though the commissioner of the general land-office had never certified the land over to the state, as required by the act above mentioned. The defendants, who claimed as pre-emptors under the laws of the United States, and to whom patents had been issued by the United States upon declaratory statements made in 1864, combated this view, and the state court sus-

tained the contention of defendants, holding that until the commissioner had made the certificate required by the act the title did not vest in the state. The Supreme Court of the United States held that this was erroneous, and for this error reversed and remanded the cause. Its ruling is, that the township plat, having been returned to the general land-office after the patents to the defendants were issued, was not conclusive against the United States that the land was swamp and overflowed, but if the township plat had been approved before the patents were issued, it would have been conclusive that the lands sued for were of that character, and that the certificate of the commissioner is only an official recognition that the lands are of the character designated, and of the completeness of the segregation. We understand this ruling of the highest court of the United States to be that when the plat of the township representing lands upon it to be swamp and overflowed is approved, the title to such land vests in the state, though the commissioner has not made the certificate required by the act.

Though in the case of *Wright* v. *Roseberry* the plat of the township survey was required, under another section of the act of 1866, to be approved both by the United States surveyor-general for California and by the commissioner of the general land-office, still, when it was approved, the same effect resulted; that is to say, when the plat of survey with the representation on it required by the act had been approved, the title to the land designated on it as swamp and overflowed vested in the state.

In the case before us, the approval was only required to be made by the United States surveyor-general, and when this was done the result followed as above pointed out. In this view we think the ruling of the Supreme Court in *Wright* v. *Roseberry* sustains the conclusion here reached.

In this cause nothing had occurred by which the plaintiff could have acquired a semblance of right until

long after the plat of the township survey had been approved, and the title had vested in the state. Therefore, in accordance with the ruling of the United States Supreme Court, when the patent herein was issued, the United States had nothing which it could grant to the plaintiff. The patent to the plaintiff was then issued without authority of law, and as against the defendants and their testator was of no validity whatever.

In the conclusion here reached, we have followed the decision of the Supreme Court in *Wright* v. *Roseberry,* overruling the decision of this court in the same case. As the question involved is a federal one, depending on the construction of an act of Congress, we are bound to follow the decision of the federal court on the points in controversy, and to disregard the decision of this court on the same points.

There is nothing said in *Heath* v. *Wallace,* 71 Cal. 50, which is not in accord with what is said herein. In that case, the land was not represented on the approved township plat as *swamp and overflowed,* but " *subject to periodical overflow.*" We held that this was not representing the land as swamp and overflowed. There is in this state, and it may be presumed in every other state, lands which are subject to periodical overflow, but which are eminently fit for cultivation, and on which valuable crops of cereals are grown. Such lands are not swamp and overflowed, as has been held by this court. (See *People* v. *Morrill,* 26 Cal. 336; *Keeran* v. *Griffith,* 31 Cal. 461; *Keeran* v. *Allen,* 33 Cal. 542.)

We add here that it appears from the findings herein that a hearing was, in 1874, ordered by the commissioner of the general land-office as to whether the land involved in this case was or was not swamp and overflowed, and that such hearing was subsequently had, on which it was determined that it was not swamp and overflowed. But the order for a hearing was made after the title had vested in the state, and therefore the decision of the

federal land department, that the land was not swamp and overflowed, was of no validity whatever. Had any right been claimed by a pre-emptor prior to the approval of the township map, such hearing might have been ordered and had by the commissioner, but certainly this cannot be so when all right had passed from the United States to its grantee. The title to the land under such circumstances had passed entirely beyond the control of the United States land department, and beyond the power of the federal government, unless the title had been procured by fraud, to redress which resort must be had, not to the land department, but to the judicial courts.

The judgment is reversed, and the cause remanded, with directions to the court below to enter judgment for the land in suit and the rents and profits in favor of the defendants. So ordered.

SHARPSTEIN, J., and McFARLAND, J., concurred.

Hearing in Bank denied.