[No. 15817.    Department One.—March 20, 1895.]

# WILLIAM B. McCABE, Appellant, v. CHARLES GOODWIN et al., Respondents.

Swamp and Overflowed Land—Grant to State.—The grant of swamp and overflowed lands to the several states by the act of Congress of September 28, 1850, was a grant *in presenti*, and operated as an immediate transfer to the state of California of all lands within its boundaries which at that date were "swamp and overflowed" within the meaning of the act.

Id.—Designation of Land on Township Plat.—Under the act of Congress of July 23, 1866, the representation of lands as swamp and overflowed upon an approved plat of a township was a determination by the United States that such lands were of that character, and that the title thereto vested in the state at the passage of the act of September 28, 1850.

Id.—Sale of Land by State.—The power 'of the state of California to dispose of its swamp and overflowed lands ends when it has once disposed of them in pursuance of the act of April 21, 1858, and the acts amendatory thereof.

Id.—Certificate of Purchase—Transfer of Title.—Under these acts, a certificate of purchase for swamp and overflowed lands, issued by the registrar of the land-office, is *prima facie* evidence of title, and vests in the purchaser the entire ownership of the lands described therein, and thereafter he can make the same disposition of such lands as could any other owner of lands, and his delay to apply for a patent from the governor does not affect his title.

Id.—Assignment of Certificate—Corporation.—Where a certificate of purchase of such lands has been issued to a properly qualified purchaser, he may assign the same to a corporation, and thereupon it or its assignee becomes entitled to a patent; and, where such assignment was made prior to the taking effect of the constitution of 1879, the right of the corporation or its assignee to a patent is not affected by the provisions of section 3 of article XVII of that constitution, forbidding the state to grant the lands to any but "actual settlers."

Id.—Action to Determine Contest—Assignee of Original Defendant. In an action to determine the right to purchase such land, the plaintiff, who has by amendment joined as a party defendant a purchaser *pendente lite*, cannot, on an appeal from a judgment in favor of such purchaser, object for the first time to the power of the trial court to determine the rights of such purchaser.

Appeal from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

*Ira C. Jenks*, and *J. A. Barham*, for Appellant.

The certificates of purchase do not pass the title. At most they are only agreements to convey the title. (*Taylor* v. *Weston*, 77 Cal. 534; *Jacobs* v. *Walker*, 76 Cal. 175; *Gilson* v. *Robinson*, 68 Cal. 542.) The court had no jurisdiction to adjudicate any rights asserted by the defendant Goodwin. (Pol. Code, sec. 3414; *Danielwitz* v. *Temple*, 55 Cal. 42; *Byrd* v. *Reichert*, 74 Cal. 579.)

*Hudson & Sayre*, for Respondents.

HARRISON, J.—This action was brought under section 3415 of the Political Code, to determine a conflict before the surveyor general respecting the right to purchase from the state certain swamp and overflowed lands in Lake county. August 1, 1860, certificates of purchase were issued by the registrar of the land-office for different portions of the lands to Isaac P. Rice and James E. Allen, respectively, which, by proper transfer and assignments, were afterwards vested in the defendant Goodwin—the one issued to Allen, September 16, 1862, and the one issued to Rice, April 30, 1869. The full amount of the purchase money and interest thereon for the lands represented by the certificate issued to Rice was paid to the state May 12, 1868, and for those represented by the certificate issued to Allen March 8, 1873. The plaintiff entered and took possession of the lands March 5, 1884, and has since been in possession thereof. At the time of so entering Goodwin was in possession of the lands, and, upon being excluded therefrom by the plaintiff, commenced an action in ejectment against him which is still pending in Lake county. August 1, 1890, the plaintiff made application to the surveyor general for the purchase of the lands from the state, with the knowledge that they were claimed by the defendant Goodwin under the above certificates of purchase; and at his instance the contest was transferred to the superior court of Lake county. The lands are a part of township 14 north, range 9

west, Mt. Diablo meridian, and the plat of the township was approved by the United States surveyor general for California August 24, 1884. On this plat the lands in question were designated and marked as swamp and overflowed lands. The court below found that the plaintiff was not entitled to purchase any portion of the lands, and that the defendant Goodwin was the owner of the aforesaid certificates of purchase issued to Allen and Rice, and was entitled to receive a patent from the state therefor. From the judgment entered thereon the plaintiff has appealed.

The grant of swamp and overflowed lands to the several states by the act of Congress of September 28, 1850, was a grant *in præsenti*, and operated as an immediate transfer to the state of California of all the lands within its boundaries which at that date were "swamp and overflowed" within the meaning of the act. (*Wright* v. *Roseberry*, 121 U. S. 488; *Tubbs* v. *Wilhoit*, 138 U. S. 134, affirming 73 Cal. 61.) The subsequent segregation of these lands from the upland is merely a designation of the boundaries of the lands thus granted without conferring any additional title. While a patent issued therefor, or any equivalent determination by the land department of the character of the lands would have the effect to estop the United States from afterwards questioning their character, it does not confer any additional title upon the state. "The patent would be evince of such identification and declaratory of the title conveyed. It would establish definitely the extent and boundaries of the swamp and overflowed lands in any township, and thus render it unnecessary to resort to oral evidence on that subject." (*Wright* v. *Roseberry, supra.*) By the act of July 23, 1866 (14 U. S. Stats., p. 218), Congress provided an additional mode for identifying the swamp and overflowed lands which were conveyed to the state of California by the aforesaid act of September 28, 1850. In the fourth section of this act it is declared: "That in all cases where township surveys have been, or shall hereafter be, made under authority of the United

States, and the plats thereof approved, it shall be the duty of the commissioner of the general land-office to certify over to the state of California, as swamp and overflowed, all the lands represented as such upon such approved plats, within one year from the passage of this act, or within one year from the return and approval of such township plats." It was held in *Wright* v. *Roseberry, supra,* that the representation of lands as swamp and overflowed upon the township plat, made by the surveyor general, was as conclusive against the United States as if they had been patented under the act of 1850, or had been certified over to the state under the provisions of section 2488 of the Revised Statutes. It follows that when the township plat, including the lands in question, was filed August 23, 1884, it was a determination by the United States that the lands involved herein were, on the 28th of September, 1850, swamp and overflowed lands, and that the title thereto vested in the state of California at the passage of that act.

As the proprietor of the lands the state could make such disposition as it chose, and, when it had once disposed of them, its power of disposition was at an end. In the act of April 21, 1858 (Stats. 1858, p. 198), and acts amendatory thereof, provision was made for the disposition of the lands received by the state by virtue of the act of Congress of September 28, 1850, under which any person qualified to become a purchaser might, upon making proper application, make the payment for said lands, and receive from the registrar of the land-office a certificate of purchase. This certificate of purchase was declared to be *prima facie* evidence of title, and is sufficient to enable the holder to recover in ejectment. Upon its presentation to the governor by any person holding such certificate section 7 of the act declared that if the governor should find that the whole amount of the purchase money, together with interest thereon, had been paid he should issue a patent for the land. When Goodwin, therefore, on May 12, 1868, had

paid the full amount of the purchase money due on the certificate issued to Rice, and on March 8, 1873, had paid the full amount due on the certificate issued to Allen, he had become vested with the entire ownership of the lands described in said certificates of purchase, and could make the same disposition of the lands as could any other owner of lands. By issuing the certificates of purchase, and receiving the money for the lands in accordance with the provisions of the statute, the state had as effectually parted with all interest in the lands as if the patent therefor had been issued. Whether Goodwin made immediate application for a patent, or whether its issuance after its application was delayed by the governor, would be immaterial; his right to the land was vested, and the governor had no discretion in issuing the patent to him. "When a party is authorized to demand a patent for land his title is vested as much as if he had the patent itself, which is but evidence of his title."

September 22, 1876, Goodwin transferred the aforesaid certificates of purchase to the Clear Lake Water Works, a corporation, and, on July 24, 1882, the last-named corporation transferred the certificates to the California Agricultural and Improvement Association, a corporation, and, on June 27, 1891, the last-named corporation transferred them to the defendant Goodwin. It is contended by the appellant that by reason of these transfers the state has become released of its obligations to issue a patent for the lands; that, under the provisions of section 3 of article XVII of the constitution, the state is forbidden to grant the lands to any but "actual settlers," and that, in the nature of things, a corporation can be neither a citizen of the state nor an actual settler upon the lands. At the time of the transfer of the certificates, September 22, 1876, Goodwin, as we have seen, was vested with the ownership of the lands, without any limitation upon their transfer, and at that date there was no inhibition upon the state respecting the character of any grantee of its

lands. By the terms of the statute under which the state had sold the lands it had agreed that upon the payment therefor, it would issue a patent "in case such original certificate has been assigned, then to the last assignee of such certificate, or to his legal representative, and the title shall vest in such assignee or legal representative as effectually as if he had been the original purchaser." The "purchaser" of lands is the person to whom the certificate of purchase is issued, and who pays for the lands. The act of 1858 limits the character of those to whom a certificate of purchase may be issued, but does not limit the character of those to whom the patent is to be issued. On the contrary, section 7 of the act provides that any person "holding" the certificate of purchase shall be entitled to the patent upon the payment of the whole amount of the purchase money, and, as above quoted, that the patent shall be issued to the assignee of the original holder with as much effect as if issued to the original purchaser himself. The certificate of purchase has been termed, as against the state, "evidence of a contract to convey." (*Taylor v. Weston*, 77 Cal. 540.) The state cannot divest itself of the obligation of this contract by a constitutional provision, any more than it can by a statutory enactment. If any other interested person would show that the state is not bound to comply with such contract he is authorized by section 3414 of the Political Code to procure a judicial determination of this question by having previously instituted a contest in the surveyor general's office, and causing a transfer to the superior court of the county in which the lands are situated. If, upon such contest, it appears that the certificate of purchase was issued to one properly qualified, and that the holder thereof has fully complied with the terms of the contract on his part, he is entitled to a judgment in his favor, and against the state, for the issuance to him of a patent for the lands.

The order referring the contest to the superior court was entered in the surveyor general's office December

23, 1890, and was filed in the superior court of Lake county, February 5, 1891. In this order the conflicting claims of the plaintiff and the aforesaid Rice and Allen were set out. The original complaint herein was filed February 21, 1891; but the fourth amended complaint upon which the cause was tried, filed August 19, 1892, is the only complaint set forth in the transcript. In this last complaint the plaintiff has included as defendants various individuals and corporations under the averment that they have, or claim to have, some interest, right, or title in and to the lands herein described, under the aforesaid Rice or Allen, and has also made as a defendant the respondent Goodwin, who, he alleges, " claims to hold the lands as grantee, lessee, or otherwise, from the said Rice and Allen, or one of them, or from their assignee or assignees, or one of them, or from the defendant, the Clear Lake Water Works, or the defendant, the California Agricultural Improvement Association, or one of them"; and asks judgment that the defendants are neither, nor any of them, entitled to purchase said lands from the state. Goodwin answered this amended complaint, in which he set forth, among other matters, his assignment aforesaid to the Clear Lake Water Works, the subsequent assignment by it in 1882 to the California Agricultural and Improvement Association, and the assignment by the latter corporation to himself June 27, 1891. Upon the issues thus presented the cause was tried and judgment rendered that Goodwin was entitled to receive the patent for the lands. The appellant now urges that, inasmuch as the certificates of purchase were not assigned to Goodwin until after the commencement of the present action, this portion of the judgment was unauthorized. The averments of the original complaint are not before us, but we are of the opinion that by making Goodwin a party defendant, and asking judgment that he be not entitled to purchase said lands from the state, the plaintiff is precluded from making this objection to the action of the court. (See *Perri* v.

*Beaumont*, 91 Cal. 30.)    Upon the face of the record Goodwin's claims to the patent appears to have been presented to the superior court, and determined without any objection in that tribunal on the part of the appellant.    If the appellant would have contested Goodwin's right to have his claim determined in this proceeding, he should have made the objection in the superior court, and not have raised it for the first time after the appeal to this court.

The judgment is affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.