[Civ. No. 364.   Third Appellate District.—November 1, 1907.]

LAURA W. BLAKELEY, Respondent, v. W. S. KINGS-
BURY, Surveyor General, etc., and Ex-officio Register
of State Land Office, Appellant.

STATE LANDS—RECLAIMED SWAMP LANDS—TIME OF CONTEST.—Not-
withstanding the right conferred to obtain a patent from the state
of lands which have been fully reclaimed as swamp and overflowed
lands, a contest may be instituted in reference to such lands upon
a conflicting application at any time before a patent has been
granted.

ID.—ORDER OF REFERENCE—PATENT NOT ALLOWABLE UNTIL DETERMINA-
TION OF CONTEST—SLEEPING UPON RIGHTS—MANDAMUS.—When the
surveyor general has made an order of reference of a contest as to
the right to purchase reclaimed state swamp lands, a patent cannot
issue until the contest is determined; and pending the same *mandamus*
will not lie to compel the issuance of a patent, although there was
a period before the order of reference when a patent might have
been obtained by the reclaiming party, who slept upon her rights
until it was too late.

ID.—DISPOSITION OF STATE LANDS—LAW PART OF CONTRACT.—The dis-
position of state lands is one entirely of legislative control; and
the law enters into and becomes part of the contract with the state.
The applicant cannot, because of a supposed vested right to a
patent, prevent and nullify a contest already instituted and referred
to the courts, as required by the law, before the patent was ob-
tained.

ID.—MANDAMUS—DUTY ENJOINED BY LAW—ADEQUATE REMEDY.—*Man-
damus* will only lie to compel the performance of an act which the
law specially enjoins as a duty resulting from an office, trust or
station; and it will not lie where an adequate remedy is provided by
law.

APPEAL from a judgment of the Superior Court of Sac-
ramento County.   J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, and M. C. Glenn, Deputy
Attorney General, for Appellant.

Chas. G. Lamberson, Frank Lamberson, and H. P. Brown,
for Respondent.

BURNETT, J.—On the tenth day of December, 1903, plaintiff filed in the office of the surveyor general and register of the land office her duly verified application to purchase from the state under the provisions of an act entitled "An Act regulating the sale of the lands uncovered by the recession or drainage of the waters of inland lakes and unsegregated swamp and overflowed lands and validating sales and surveys heretofore made," approved March 24, 1893 [Stats. 1893, p. 341], all of section 15, in township 22 south, range 18 east, M. D. M., situated in Kings county, this state.

The said application contained the statement of facts required by law.

On June 10, 1904, the application was approved by the surveyor general of the state, and on July 30, 1904, plaintiff paid twenty per cent of the purchase money and the interest on the balance till January 1, 1905, and on August 5, 1904, the surveyor general issued to plaintiff a certificate of purchase.

Afterward, the board of supervisors of Kings county formed a reclamation district including all of said section 15.

Plaintiff paid the assessments levied by said board on her land.

On June 5, 1905, after proper proof was received, the said board of supervisors made an order adjudging that the work of reclamation of said district had been fully completed and that the lands therein had been fully reclaimed, and the board directed the clerk of the county to certify said facts to the register of the state land office. This was done, and the said register made his return to the treasurer of the county of Kings crediting each tract of said land, including section 15, with full payment.

July 26, 1905, C. W. Porter filed in the office of said surveyor general an application for the northwest quarter of said section 15 with a duly verified protest against the issuance of any further evidence of title to the said quarter to plaintiff, together with a demand that the matter of the conflicting claims to the right to purchase said land be referred to the proper court for adjudication.

On July 27, 1905, one R. R. Cadwell filed in the same office a similar protest in reference to the east half and the southwest quarter of said land and a similar demand for reference.

On the latter date the surveyor general made an order referring said contests to the superior court of Kings county and proferts were regularly issued and filed; and within sixty days from the order of reference plaintiff filed in the superior court of said county a complaint against Porter and also one against Cadwell, in each of which she set forth the facts upon which she relied to establish her right to purchase all of said section 15.

Both actions are still pending and undetermined in said superior court of Kings county.

On the twelfth day of December, 1905, plaintiff filed in the superior court of Sacramento county her affidavit and petition for a writ of mandate to compel the surveyor general as register of the state land office ''to prepare a patent from the state of California to plaintiff for execution according to law, for the land hereinbefore described, . . . together with a certificate that the laws in relation to the execution of such patent have been complied with; that payment in full has been made, and that the plaintiff herein is entitled to the same.''

An alternative writ was issued, and an answer having been filed, a trial was had and the writ was made peremptory, from which the surveyor general has appealed.

The law provides that the writ shall issue ''to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.'' (Code Civ. Proc., sec. 1085.)

The contention of appellant is that under the circumstances of the case the law not only did not impose upon him the duty to issue the patent, but that by the order of reference he became divested of authority to proceed any further in the matter of confirmation of plaintiff's title, and that the whole question was relegated to the said superior court of Kings county which thereby acquired exclusive jurisdiction to determine to whom the patent should be issued.

The basis for the contention is section 3414 of the Political Code, which provides: ''When a contest arises concerning the approval of a survey or location before the surveyor general or concerning a certificate of purchase or *other evidence of title* before the register, the officer before whom the contest is made may, when the question involved is as to the survey, or one purely of fact . . . proceed to hear and deter-

mine the same; but when, in the judgment of the officer, a question of law is involved, or *when either party demands a trial* in the courts of the state, he must make an order referring the contest to the district (Superior) court of the county in which the land is situated, and must enter such order in a record book in his office.''

As to the subsequent proceedings, section 3415 provides that: ''After such order is made either party may bring an action in the Superior Court of the county in which the land in question is situated to determine the conflict, and the production of a certified copy of the entry, made by either the surveyor-general or the register, gives the court full and complete jurisdiction to hear and determine the action.''

These provisions have been considered more than once by the supreme court.

It has been held that the jurisdiction of the court depends upon the order of reference. (*Keema* v. *Doherty,* 51 Cal. 7; *Vance* v. *Evans,* 52 Cal. 93; *Danielwitz* v. *Temple,* 55 Cal. 42.)

Again, the statute is silent as to when the contest before the surveyor general must be initiated; but—disregarding the question of the statute of limitations which does not arise here—the contest is not too late if begun before the patent has been issued; and, as a general rule, applicable to state lands, after such contest is inaugurated the state officers have no right to issue the patent, but must await the result of the proceedings brought; in other words, must abide by the judgment of the court having jurisdiction by reason of the order of reference to determine the controversy between the parties. (*People* v. *Carrick,* 51 Cal. 325; *Gilson* v. *Robinson,* 68 Cal. 539, [10 Pac. 193]; *Garfield* v. *Wilson,* 74 Cal. 176, [15 Pac. 620]; *McFaul* v. *Pfankuch,* 98 Cal. 400, [33 Pac. 397]; *Youle* v. *Thomas,* 146 Cal. 544, [80 Pac. 714]. See, also, *Miller* v. *Donovan,* 3 Cal. App. 325, [85 Pac. 159].)

It is true that before the contests here were filed there was a period of about forty-five days during which respondent, by surrendering the certificate of purchase, could have secured the patent. (Pol. Code, secs. 3519, 3521.)

As the application of plaintiff was approved by the surveyor general June 10, 1904, the course suggested was open to her at any time between June 10, 1905, and July 26, 1905, when Porter's application was filed.

But she slept on her rights until October 28th following, when she demanded the patent.

This was too late, as we have seen, because in obedience to the requirement of the statute the surveyor general had transferred the matter to the superior court of Kings county.

But respondent's contention is not that she is entitled to a patent because more than one year had expired after the approval of her application to purchase and before a contest was filed, but when, in the language of her brief, "her application was approved there was then and there a contract entered into between her and the state by which, if she caused the land to be reclaimed as provided by the laws relating to the reclamation of such land, she would, after the statutory period of one year, be entitled to the issuance of a patent for said land. And the fact that respondent had thus, by the lapse of time, become entitled to a patent, coupled with the fact that she had, before the expiration of the year, paid in full for the land by reclaiming it gave to the respondent the absolute right to a patent for said land."

But respondent seems to be begging the question.

She assumes the very proposition in dispute, that when the year has elapsed and she has paid for the land the surveyor general must issue the patent, although in the meantime he had transferred the contest to the superior court in consequence of the question having arisen in the orderly way as to whom must be issued "other evidence of title."

It is clear that the rights of the plaintiff and the duty of the defendant must be determined by a consideration of the provisions of the statute.

The question is one entirely of legislative regulation and control.

The state in its sovereign capacity owns these lands, and it has the incontestable right to prescribe what steps shall be taken by an individual desiring to secure title in himself and how adverse claims to the same tract shall be determined.

We are not concerned as to the doctrine of estoppel, nor is it a case where payment alone entitles the claimant to a patent.

Every intending purchaser is charged with notice that he must establish certain facts to secure the approval of the surveyor general, that he must make certain payments, and that after the expiration of a certain time he may demand

and secure his patent, upon the contingency, however, that in the meantime a contest may be filed which shall impose upon the claimant the additional duty of proving to the satisfaction of a superior court that the statements in his application to the surveyor general are true.

These provisions of the law enter into and become a part of the contract with the state.

It is true that the legislature has provided a complete scheme for the reclamation of this species of state lands, and has intrusted to certain local officers the administration of its details, and has required of them important duties, and has directed that "whenever the trustees, or owners of lands, if there be no trustees, certify under oath to the board of supervisors who form the district and show to their satisfaction that the works of reclamation are completed, or that $2 per acre in gold coin has been expended on the works of reclamation, the board of supervisors must thereupon credit each purchaser in the district with payment in full for such lands, and the purchasers are entitled to patents therefor." (Pol. Code, secs. 3476, 3477.)

But there is nothing herein which excludes the operation of the general provision in reference to contests before the patent has been issued to determine whether the claimant has stated the truth in his verified application to the surveyor general.

He is "entitled to the patent" upon the assumption, of course, that he has complied with the law and has not committed perjury, but if the issue as before indicated has been properly referred he must meet it in court.

Is there anything in the said act of 1893 excluding the operation as to claimants thereunder of the general provision of the law in reference to contests?

The only allusion to the question is found in section 4, which provides that "No application to purchase land under this act shall be approved by the surveyor general until the expiration of ninety days from the filing thereof in his office, and meanwhile the land shall be subject to the adverse claim of any actual settler who has resided thereon when the said application was filed."

In *Wrinkle* v. *Wright*, 136 Cal. 494, [69 Pac. 150], it is said that "The above provision was only intended for the purpose of giving those who were actual settlers at the time

the application was filed the preferred right to purchase'';
and it would seem to be contemplated that within the ninety
days this preferred right of ''actual settlers'' might be
established before the surveyor general who would thereupon
decline to approve the original application to purchase.

In the Wrinkle case, *supra*, it is further stated in regard
to this act that ''section 1 prescribes the conditions which en-
title a party to purchase; and any applicant to purchase may
show in a contest that he possesses the qualifications which
entitle him to purchase, and that the party with whom he is
contesting does not possess the requisite qualifications. The
right to contest follows from the right of a qualified appli-
cant to purchase.''

As to the liability of a contest before the patent has been
actually issued the law makes no distinction between a claim-
ant who has paid the purchase price directly in coin and him
who has been subjected to his just proportion of the expense
of reclamation, and there certainly can be no difference in
principle.

Respondent's argument that she is entitled to a patent be-
cause she has a vested right to it by reason of having com-
plied with the requirements of the law would be of compelling
force if addressed to the court wherein the aforesaid actions
are pending; but when presented to this forum in this pro-
ceeding it ignores the fact that the legislature has provided
the other course for the determination of whether she has in
fact complied with the requirement of the statute.

The following cases are cited by respondent as upholding
her contention that after the payment in full for the land
she became the owner and the state a mere trustee of the legal
title which it was bound to convey on demand. (*People* v.
*Shearer*, 30 Cal. 647; *Bludworth* v. *Lake* [No. 1], 33 Cal.
262; *Pratt* v. *Crane*, 58 Cal. 533; *McCabe* v. *Goodwin*, 106
Cal. 488, [39 Pac. 941]; *Pioneer Land Co.* v. *Maddux*, 109
Cal. 640, [50 Am. St. Rep. 67, 42 Pac. 295]; *Stark* v. *Starrs*,
6 Wall. (U. S.) 402; *Huff* v. *Doyle*, 93 U. S. 558; *Wirth* v.
*Branson*, 98 U. S. 118; *Benson Mining Co.* v. *Alta Mining
Co.*, 145 U. S. 432, [12 Sup. Ct. Rep. 877].)

They are not in point here for reasons already stated.

When respondent proves in the suits pending in Kings
county that she has complied with the statutory requirement,
under the authority of those cases the judgment must neces-

sarily be in her favor; and it must be presumed that the proper officers in consonance with said judgment will do their duty and issue to her the patent.

Respondent's argument that because of full payment she has a vested right to the patent would in effect lead to this: Within fifty days after the approval of the application by the surveyor general (Pol. Code, sec. 3440), an applicant, if he desires, may make a complete payment and thereby prevent or nullify a contest, although the patent could not be issued until ten months thereafter.

This view is not countenanced by the decisions we have already considered.

Again, the application for a writ of mandate seems an unnecessary proceeding.

The suits begun in Kings county afford a specific and adequate remedy for respondent and one which is equally convenient, beneficial and effective as the proceeding by mandamus.

It is true that the surveyor general is not therein made a party, but the contestants are, and they will be bound by any judgment rendered therein, although not affected by the judgment in the case at bar; and it must be assumed that due effect will be given to the proceedings and judgment in said court.

At least the duty of the surveyor general to prepare the patent and certificate as claimed by respondent is not so clear under the circumstances as to justify the issuance of the writ of mandate.

Besides, since the suit in the said superior court of Kings county was brought by respondent and the questions involved can be properly and finally determined in that proceeding, respondent should be held to have voluntarily selected that forum in which to litigate her rights, and she might well be considered as estopped by her own conduct from afterward seeking to transfer the controversy to another jurisdiction and invoking other forms of relief. (Spelling on Injunction and Other Extraordinary Remedies, sec. 1376, and cases cited.)

At any rate, we find ourselves unable to agree with the learned trial judge that the writ should issue, and the judgment is, therefore, reversed.

Chipman, P. J., and Hart, J., concurred.